In the

# United States Court of Appeals
## For the Seventh Circuit

No. 24-3277

JOHN KUTRUBIS and BETTY STOKES,

*Cross Claimants/Cross Respondents-Appellees*,

*v.*

EUGENIA KAMBEROS, individually, as independent executor of the estate of Lambros J. Kutrubis, and as Trustee for the Lambros J. Kutrubis Trust Dated 5/31/2002,

*Cross Respondent/Cross Petitioner-Appellant*.

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:21-cv-3134 — **LaShonda A. Hunt**, *Judge*.

SUBMITTED SEPTEMBER 9, 2025 — DECIDED JULY 29, 2026

Before ST. EVE, LEE, and KOLAR, *Circuit Judges*.

LEE, *Circuit Judge*. Faced with deteriorating health, Lambros J. Kutrubis ("Lambros") wanted to change the designated beneficiary of his life insurance policy ("Policy") from the "then acting trustee" of his trust to his ex-wife, Betty Stokes ("Betty"), and adopted son, John Kutrubis ("John"). And so, he signed a letter addressed to the insurer, Banner

Life Insurance Co. ("Banner"), requesting that the designated beneficiary be changed to Betty and John. Rather than sending the letter himself, however, Lambros asked his friend to mail the letter for him.

After Lambros died, Betty and John requested the life insurance proceeds under the Policy. Banner, however, had not received the change-of-beneficiary letter. Meanwhile, Eugenia Kamberos ("Eugenia"), Lambros's sister, was named the trustee of Lambros's trust and sought the funds for the trust.

In light of the conflicting claims, Banner instituted this interpleader action to determine the correct beneficiary of the life insurance proceeds. Betty and John moved for summary judgment, contending that Lambros had substantially complied with Banner's change-of-beneficiary procedures. The district court agreed and granted the motion, and Eugenia appeals. We affirm.

## I. Background

In August 2002, Banner issued a life insurance policy to Lambros. At the time, Lambros listed as his primary and sole beneficiary the "then acting trustee of the Lambros J. Kutrubis Trust dated May 31, 2002." Dkt. 50 ¶ 6.[1] The Policy provided, in relevant part:

> During the insured's lifetime, the owner may change the beneficiary designation unless he or she has waived the right to do so. No beneficiary change will take effect until a written notice is received at [Banner's] administrative offices.

---

[1] "Dkt." refers to the docket number in the district court record.

Dkt. 3, Ex. 15 at 7.

As his health began to fail, Lambros contacted his friend, James Wedel, in June 2020 and dictated a letter to change the Policy's beneficiary to his ex-wife, Betty, and his adopted son, John. Lambros provided Wedel with the information necessary to complete the beneficiary change and instructed Wedel to include space on the letter for the signature of two witnesses.

A few days later, Lambros signed the letter at a local restaurant before two witnesses, Wedel and John Campo. The two then signed the document, which was notarized by Michael Tovella, a notary public. At Lambros's request, Wedel placed the executed letter in an envelope addressed to Banner with the proper postage and placed the envelope in the United States Post Office mailbox that same evening.

Lambros died on September 11, 2020. Several weeks later, counsel for Betty and John sent a copy of the change-of-beneficiary letter to Banner and requested the proceeds. Banner responded in December, stating that, because it had not received the letter prior to the Lambros's death, the trustee of Lambros's trust remained the beneficiary of record.

Banner nevertheless instructed Betty and John to complete a claimant statement form if they wished to make a claim for proceeds under the Policy. They did so.

Within two months, an attorney for Eugenia contacted Banner and informed the insurer that Eugenia had been named the trustee of Lambros's trust. And, as the trustee, Eugenia requested that the insurer release the proceeds to her for the benefit of the trust.

In light of potentially competing claims, Banner initiated this interpleader action. Banner then deposited the proceeds with the court and was dismissed from the case.

Betty and John eventually moved for summary judgment and submitted a memorandum of law and statement of undisputed facts pursuant to the district court's Local Rule 56.1. Eugenia countered by filing a brief but failed to submit a response to their statement of facts as Rule 56.1 required. Due to Eugenia's noncompliance, the court deemed admitted Betty and John's statement of facts and granted summary judgment in their favor. Eugenia appeals.

## II. Discussion

We review a district court's grant of summary judgment *de novo*. *Foster v. PNC Bank, Nat'l Ass'n*, 52 F.4th 315, 320 (7th Cir. 2022). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). At the summary judgment stage, we construe the record and all reasonable inferences in the light most favorable to the nonmoving party. *Weaver v. Speedway, LLC*, 28 F.4th 816, 820 (7th Cir. 2022).

### A. Local Rule 56.1

On appeal, Eugenia contends that the district court erred in taking as true Betty and John's statement of material facts. She insists that her brief in opposition to summary judgment honored "the spirit" of the local rule.

Local Rule 56.1(b) requires a party opposing summary judgment to file a response to the movant's "statement of material facts that complies with LR 56.1(e)." The response "must

consist of numbered paragraphs corresponding to the [movant's] numbered paragraphs." LR 56.1(e)(1). "Each response must admit the asserted fact, dispute the asserted fact, or admit in part and dispute in part the asserted fact." LR 56.1(e)(2). "To dispute an asserted fact, a party must cite specific evidentiary material that controverts the fact and must concisely explain how the cited material controverts the asserted fact." LR 56.1(e)(3). The rule warns: "Asserted facts may be deemed admitted if not controverted with specific citations to evidentiary material." *Id.* And, to the extent that a party opposing summary judgment "wishes to assert facts not set forth in the [movant's] statement," the party "shall serve and file" its own "statement of additional material facts." LR 56.1(b)(3).

We have held time and time again that a district court has the discretion to find that "a failure to respond by the non-movant as mandated by the local rules results in an admission." *Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003). Here, Eugenia's brief does not lay out numbered paragraphs corresponding to Betty and John's numbered paragraphs. It does not dispute, admit, or dispute in part and admit in part any numbered paragraph in Betty and John's statement of material fact. The district court did not err in deeming admitted Betty and John's statements of material fact.

## B. Credibility Challenges

Eugenia next contests the validity of the change-of-beneficiary letter based on the facts Betty and John presented. It is true that we must draw all inferences in a light most favorable to Eugenia at this stage, but we are "not required to draw every conceivable inference from the record—only those inferences that are reasonable." *Bank Leumi Le-Israel, B.M. v. Lee*, 928 F.2d 232, 236 (7th Cir. 1991) (citation modified). And the

burden rests with Eugenia to "set forth specific facts demonstrating that there is a genuine issue for trial." *Id.* (citation modified).

In support of their summary judgment motion, Betty and John submitted affidavits from: (1) Wedel, a friend of both Betty and Lambros, who drafted and witnessed the letter; (2) Campo, a friend of Betty, who witnessed the letter; (3) Jared Kelner, another of Betty's friends, who observed the events at the restaurant; (4) Michael Tovella, a friend of both Betty and Lambros who notarized the letter; and (5) Betty herself. The affidavits described how Lambros went about creating the letter and executing it at the restaurant.

Eugenia provides no evidence that directly contradicts the affidavits or otherwise calls the affiants' credibility into question. *See Springer v. Durflinger*, 518 F.3d 479, 484 (7th Cir. 2008) ("[W]hen challenges to witness' credibility are *all* that a [non-movant] relies on, and he has shown no independent facts—no proof—to support his claims, summary judgment in favor of the [movant] is proper.") (emphasis in original) (citation omitted). And what arguments she does make to undermine their reliability are unpersuasive.

First, Eugenia asserts that Chicago's COVID pandemic shutdown orders, which prohibited indoor dining in June 2020, raise doubts about Betty and John's assertion that Lambros signed the document at a restaurant. But, without more, Chicago's indoor dining ban does not undermine the witnesses' testimony, especially since Eugenia concedes that outdoor dining was permitted at the time.

Next, Eugenia insists that the personal and professional relationships the affiants had with Betty call their credibility

into question. But some of the witnesses to the change-of-beneficiary letter were also friends of Lambros, and Eugenia gives no reason why these relationships would automatically negate them as witnesses.

Eugenia also relies on a handwriting expert, who opined that the signature on the change-of-beneficiary letter was unlikely to belong to Lambros. The expert's report, however, was not sworn and, therefore, inadmissible. *See Wittmer v. Peters*, 87 F.3d 916, 917 (7th Cir. 1996) (stating that defendant's expert reports "were unsworn, hence not affidavits, hence not, strictly speaking, admissible to support or oppose summary judgment").

Additionally, Eugenia notes that the change-of-beneficiary letter was not sent to Banner until months after Lambros's death, thereby casting doubt on the validity of the letter. But this is an inaccurate recitation of the record. Although it is undisputed that Banner had not *received* the letter until after Lambros's death, there is no evidence to refute Wedel's statement that he sent the change-of-beneficiary letter shortly after it was executed.

Finally, Eugenia argues that Lambros amended his Trust in September 2020, which, she contends, could cast doubt on his intent to remove the Trust as the beneficiary of the Trust's only asset, the life insurance policy. But the fact that Lambros amended his trust to reaffirm his estate plan in September 2020 does not, by itself, tend to disprove that Lambros intended to change the beneficiary of his life insurance policy.

In all, Eugenia has not come forward with admissible supporting evidence that creates a genuine dispute of material fact regarding the authenticity of the letter.

**C. Illinois Dead Man's Act**

Eugenia next argues that the district court erred by relying on the affidavits attesting to the change-of-beneficiary letter because, in her view, the Illinois Dead Man's Act precludes their admission.[2] The district court disagreed, finding that Eugenia lacked standing to invoke the Dead Man's Act.

Under the Federal Rules of Evidence, "in a civil case, state law governs the witness's competency regarding a claim or defense for which state law supplies the rule of decision." Fed. R. Evid. 601. In Illinois, the Dead Man's Act prohibits any "adverse party or person directly interested in the action" from "testify[ing] on his or her own behalf to any conversation with the deceased … or to any event which took place in the presence of the deceased [except under certain specified circumstances not relevant here]." 735 Ill. Comp. Stat. 5/8-201.

Furthermore, "[t]he only parties entitled to object to the testimony of an interested witness under this statute are adverse parties suing as representatives of the deceased or incompetent persons." *Harry W. Kuhn, Inc. v. State Farm Mut. Auto. Ins. Co.*, 559 N.E.2d 45, 51 (Ill. App. Ct. 1990) (citing *Brownlie v. Brownlie*, 183 N.E. 613, 615 (Ill. 1932)). In this case,

---

[2] The parties agree that this case falls within the court's diversity jurisdiction and, thus, Illinois law. There is complete diversity between interpleader plaintiff Banner, a citizen of Maryland, and the interpleader defendants, who are all citizens of Illinois. *See Arnold v. KJD Real Est., LLC*, 752 F.3d 700, 704 (7th Cir. 2014) ("In this case, the contest between the defendant-claimants, both of which are citizens of Illinois, involves only a question of Illinois law. Nevertheless, diversity jurisdiction is proper because complete diversity is assessed by looking at the plaintiff-stakeholder and the defendant-claimants."). And there is no dispute that the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

Eugenia is suing in her capacity as the executor of Lambros's estate as well as trustee of Lambros's trust. As a result, she has standing to invoke the Dead Man's Act. *Engstrom v. Edgar*, 261 N.E.2d 788, 790 (Ill. App. Ct. 1970) (Under Illinois law, where "the administratrix [of an estate] was a party to the suit and was defending against plaintiff's claim in her capacity of administratrix," the Dead Man's Act was "clearly applicable.").

We must next decide whether the challenged affiants were interested parties within the meaning of the Dead Man's Act. In Eugenia's view, they count as interested parties because they "were close business associates of [Betty] Stokes, and stood to gain tangentially from the windfall to Stokes."

Under the Dead Man's Act, an individual is an interested party if the person "will [ ] gain [or] lose by the event of the suit." *Naden v. Naden*, 346 N.E.2d 202, 207 (Ill. App. Ct. 1976). And the interest in question "must be direct and immediate." *Hockersmith v. Cox*, 95 N.E.2d 464, 469 (Ill. 1950).

Here, Eugenia has not submitted any evidence that Wedel, Campo, Kelner, or Tovella (none of whom are parties to the suit) would "gain or lose as a direct result of the suit." *Id.* Nor does she provide any authority to support the proposition that simply being a close business associate or friend to an interested party would disqualify their testimony under the Dead Man's Act.

What is more, to the extent that Eugenia is challenging their reliability as witnesses, "[c]riticizing the credibility of the movant's affiants, alone, is not enough to avoid summary judgment." *Waldon v. Wal-Mart Stores, Inc., Store No. 1655*, 943 F.3d 818, 823 (7th Cir. 2019); *see also Springer*, 518 F.3d at 484 ("[W]hen challenges to witness' credibility are *all* that a [non-

movant] relies on, and he has shown no independent facts—no proof—to support his claims, summary judgment in favor of the [movant] is proper.") (emphasis in original); *Rand v. CF Indus., Inc.*, 42 F.3d 1139, 1146 (7th Cir. 1994) ("Inferences and opinions must be grounded on more than flights of fancy, speculations, hunches, intuitions, or rumors."). Accordingly, the Illinois Dead Man's Act does not require exclusion of the affidavit testimony from Wedel, Campo, Kelner, or Tovella.

As for Betty, however, the parties concede that she is an interested party. Thus, we agree with Eugenia that the district court erred by admitting the statements in Betty's affidavit in evidence. *See Monninger v. Koob*, 91 N.E.2d 411, 415 (Ill. 1950) (The Illinois Supreme Court has long warned that testimony from interested parties regarding what a deceased individual has said "is subject to great abuse and will be carefully scrutinized when considered with the other evidence in the case.") (citation modified).

Excluding Betty's affidavit, however, does not help Eugenia's claim. The statements Betty made addressing the issues in dispute can all be found in the affidavits of the other witnesses, which, as discussed below, are sufficient to warrant summary judgment in Betty and John's favor.

### D. Substantial Compliance

Moving to the crux of the dispute, under Illinois law, an insured, who wishes to change the beneficiary of his policy, need only substantially comply with the policy's instructions on how to do so. *See Minn. Life Ins. Co. v. Kagan*, 724 F.3d 843, 849 (7th Cir. 2013); *Aetna Life Ins. Co. v. Wise*, 184 F.3d 660, 664 (7th Cir. 1999); *Hoopingarner v. Stenzel*, 768 N.E.2d 772, 776 (Ill. App. Ct. 2002); *Travelers Ins. Co. v. Smith*, 435 N.E.2d 1188,

1190 (Ill. App. Ct. 1982). Put another way, "Illinois law provides that technical requirements will not defeat the clear and manifested intention of an insured to change a beneficiary designation." *Wise*, 184 F.3d at 664.

Here, the district court determined that Lambros had substantially complied with the Policy's instructions to change the beneficiary. Eugenia disagrees, noting that the change-of-beneficiary letter was not received by Banner until after Lambros's death. Moreover, in her view, there is no evidence that Lambros actually submitted the change-of-beneficiary letter before his death in the first place.

To demonstrate substantial compliance, an insured must present evidence showing "(1) 'a clear expression of the insured's intention to change beneficiaries,' and (2) a 'concrete attempt [by the insured] to carry out his intention as far as was reasonably in his power.'" *Kagan*, 724 F.3d at 851–52 (quoting *Dooley v. James A. Dooley Assocs. Emps. Ret. Plan*, 442 N.E.2d 222, 227 (Ill. 1982)).

*Connecticut General Life Insurance Co. v. Gulley* is illustrative. 668 F.2d 325 (7th Cir. 1982). In *Gulley*, as here, the decedent properly executed a change-of-beneficiary form in the presence of a witness. *Id.* at 327. He left the form with his daughter and indicated that he would return to deliver it to his employer. *Id.* Unfortunately, the insured died before he was able to do so. *Id.* Applying Illinois law, we found that the decedent had substantially complied with the policy terms, because he had taken "a number of positive steps to effect the change of beneficiaries." *Id.* For example, we noted, he had obtained the correct form, executed the form properly and in the presence of witnesses, explained why the change was being made, and expressed his intent to deliver the form to his

employer. *Id.* at 327–28. "[W]here [the] insured takes a positive action which evidences his obvious desire for a change of beneficiary," we held, "the courts will adopt such construction as will assist in carrying out such intention." *Id.* at 328.

The same can be said here. The undisputed facts show that Lambros intended to change the beneficiaries on his life insurance policy and took affirmative steps to do so. Lambros asked Wedel to draft the change-of-beneficiary letter, dictated that letter, gathered people to witness the execution of the letter, executed the letter before two witnesses and a notary, and directed Wedel to place the letter in the mail to Banner. The fact that Banner did not receive the letter until after Lambros's death was beyond his control.

Finally, Eugenia argues that Illinois courts refuse to find substantial compliance if there is reason to suspect that the purported change of beneficiary is fraudulently obtained or made under undue influence. But, even assuming this to be correct, Eugenia presents no evidence to support such an assertion. Thus, the unrebutted change-of-beneficiary letter constitutes "a clear expression of the insured's intention to change beneficiaries." *Dooley*, 442 N.E.2d at 227.

Under these facts, we conclude that Lambros substantially complied with the change-of-beneficiary procedures in his policy, and summary judgment in favor of Betty and John was appropriate.[3]

---

[3] Eugenia also notes that "[q]uestions as to the effectiveness of a change of beneficiary are generally for the jury." *Travelers Ins. Co.*, 435 N.E.2d at 1192 (citations omitted). But, where, as here, "[n]one of the facts set forth in [a party's] affidavits relating to the facts surrounding the

\*        \*        \*

For the foregoing reasons, the judgment is AFFIRMED.

---

change of beneficiary [a]re denied" and "no disputed issues of material facts" are present, summary judgment is appropriate. *Emps.' Ret. Sys. of Ill. v. Taylor*, 476 N.E.2d 749, 752 (Ill. App. Ct. 1985); *see Mills v. First Fed. Sav. & Loan Ass'n of Belvidere*, 83 F.3d 833, 846–47 (7th Cir. 1996).